## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## AT INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: | Case No.: 13-13223 |
| SHAWN LEE ESTEP<br>JENNIFER CAMILLE ESTEP | Chapter 13 |
| | Judge: James M. Carr |
| Debtors | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND NOTICE OF OBJECTION DEADLINE WITH 30-DAY WAIVER

The creditor, OneWest Bank N.A., formerly known as OneWest

Bank, FSB, hereby moves the Court, pursuant to 11 U.S.C. §362(d), to lift the automatic stay the following real property: 9051 S. County Road 600 E. Selma, IN 47383 (Referred to herein as "Property")

In support of the motion, the creditor states the following:

1. The Debtors filed a Chapter 13 case on December 24, 2013. (Referred to herein as "Petition Date")

2. As of the Petition Date, the creditor was the holder of a claim secured by the Property, more particularly described in the Mortgage, a copy of which is attached as Exhibit "A".

3. The above described Mortgage was given to secure a Promissory Note dated April 5, 2007, and made payable to the creditor in the original sum of $304,000.00. (Referred to herein as the "Note") A copy of the Note is attached hereto as Exhibit "B".

4. The creditor perfected an interest in the Property, as shown in a Mortgage. Evidence of the Perfection is attached hereto as Exhibit "A". Assignments thereto are attached as Exhibit "C".

5. As of the date of the filing of this motion, the outstanding principal of the Note was $308,811.60 and the outstanding interest was $5,813.88.

6. The debtors' loan matured February 1, 2014, per the attached Loan Modification and there is still an outstanding balance of $321,885.11.  The Loan Modification is attached as Exhibit "D'

7. The Property is burdensome to the estate or is of inconsequential value and benefit to the estate.  Cause exists to lift the automatic stay since the interest of the creditor is not being adequately protected.

8. In the event the Order granting creditor's Motion for Relief from Automatic Stay with 30 day Waiver is entered, the provisions of Bankruptcy Rule 4001(a)(3) shall be waived and said Order shall be effective immediately.

9. The creditor hereby waives the right under 11 U.S.C. §362(e) to a hearing on this motion within thirty (30) days of the date it is filed.

**PLEASE TAKE NOTICE THAT** any objection must be filed with the Bankruptcy Clerk within 14 days of the date of this notice [or such other time period as may be permitted by Fed.R. Bankr.P. 9006(f)]. Those not required or not permitted to file electronically must deliver any objection by U.S. mail, courier, overnight/express mail, or in person at:

**US Bankruptcy Court, Southern District of Indiana, Indianapolis Division**
**116 U.S. Courthouse**
**46 East Ohio Street**
**Indianapolis, IN 46204**

The objecting party must ensure delivery of the objection to the party filing the motion. If an objection is NOT timely filed, the requested relief may be granted.

**WHEREFORE**, the creditor moves the Court to enter an order lifting the Stay and granting such other relief as appropriate.

Respectfully submitted,

  /s/ Patricia L. Johnson                              
Patricia L. Johnson, Esq. (23332-15)
Crystal L. Saresky, Esq. (89629)
GERNER & KEARNS CO., L.P.A.
809 Wright`s Summit Parkway, Suite 200
Fort Wright, KY 41011
Phone: (513) 241-7722
Fax: (859) 292-5300
bankruptcies@gernerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served by the method set forth below, upon the below listed parties, on Friday July 17, 2015.

**By Notice of Electronic Filing To:**

John Morgan Hauber, Trustee
151 N. Delaware Street Suite 1400
Indianapolis, IN 46204

Gregory S Fehribach
50 S Meridian St Ste 700
Indianapolis, IN 46204
mjurkiewicz@thefehribachgroup.com

Mark S. Zuckerberg, Esq.
429 N. Pennsylvania Street Ste. 100
Indianapolis, IN 46204
filings@mszlaw.com

**By United States Mail To:**

Jennifer Camille Estep
9051 S. County Road 600 E.
Selma, IN 47383

Shawn Lee Estep
9051 S. County Road 600 E.
Selma, IN 47383

/S/ Patricia L. Johnson
Patricia L. Johnson, Esq. (23332-15)
Crystal L. Saresky, Esq. (89629)
GERNER & KEARNS CO., L.P.A.
809 Wright`s Summit Parkway, Suite 200
Fort Wright, KY 41011
Phone: (513) 241-7722
Fax: (859) 292-5300
bankruptcies@gernerlaw.com

Label Matrix for local noticing
0756-1
Case 13-13223-JMC-13
Southern District of Indiana
Indianapolis
Fri Jul 17 09:40:52 EDT 2015

AT&T Universal Card
PO Box 6500
Sioux Falls, SD 57117-6500

Aaron's
1407 W McGalliard Rd
Muncie, IN 47304-2267

Aaron's Lease
1407 W McGalliard Rd
Muncie, IN 47304-2267

Ace Cash Express
3213 S Madison St
Muncie, IN 47302-5604

Allied Collection Service
1607 Central Ave
Columbus, IN 47201-5370

Ally Financial serviced by Ally Servicing LL
PO Box 130424
Roseville, MN 55113-0004

American Credit Acceptance
961 E Main St
Spartanburg, SC 29302-2185

American Credit Acceptance
Attn: Bankruptcy Dept
961 E Main St
Spartanburg, SC 29302-2185
bankruptcy@acacceptance.com
888-745-2088

American Credit Acceptance
PO Box 956126
Saint Louis, MO 63195-6126

American InfoSource LP as agent for
Spot Loan fka Zestcash
PO Box 248838
Oklahoma City, OK  73124-8838

Aqua Systems
7785 E. US Highway 36
Avon, IN 46123-7793

Ashley Funding Services, LLC its successors
assigns as assignee of Laboratory
Corporation of America Holdings
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Atlas Collections, Inc.
420 W. Washington Street
PO Box 44
Muncie, IN 47308-0044

Bankruptcy Law Office
429 N. Pennsylvania St - Ste 100
Indianapolis, IN 46204-1873

Bostwick Laboratories
PO Box 4155
Sarasota, FL 34230-4155

CBCS
PO Box 163250
Columbus, OH 43216-3250

CERASTES, LLC
C O WEINSTEIN,PINSON AND RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Capital One
PO Box 6492
Carol Stream, IL 60197-6492

Central Credit Services
PO Box 15118
Jacksonville, FL 32239-5118

Central Indiana Neurosurgery
2525 W University Ave #503
Muncie, IN 47303-3409

Credit Collection Services
PO Box 587
Needham Heights, MA 02494-0011

Department Stores National Bank/Macy's
Bankruptcy Processing
Po Box 8053
Mason, OH 45040-8053

Donald Dunne MD
800 S Tillotson Ave
Muncie, IN 47304-4529

Dr. Ellen Raywood
3505 W Purdue Ave
Muncie, IN 47304

East Central Radiology
2598 W White River Blvd
Muncie, IN 47303-5251

GECRB/Lowe's
PO Box 965005
Orlando, FL 32896-5005

GM Mastercard/HSBC Bank
PO Box 5253
Carol Stream, IL 60197-5253

GMAC/Ally Asset Recovery
PO Box 78369
Phoenix, AZ 85062-8369

HSBC/Menard's
PO Box 30253
Salt Lake City, UT 84130-0253

Harris & Harris Ltd
222 Merchandise Mart Plaza #1900
Chicago, IL 60654-1421

IMC CREDIT SERVICES, LLC.
PO BOX 20636
INDIANAPOLIS, IN 46220-0636

IMC Credit Services
6955 Hillside Ct
Indianapolis, IN 46250

IU Health Ball Memorial Hospital
BIlling Service Center
250 N Shadeland Ave
Indianapolis, IN 46219-4959

Indy Mac Mortgage/One West Bank
PO BOX 4045
Kalamazoo, MI 49003-4045

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

J.C. Christenson
PO Box 519
Sauk Rapids, MN 56379-0519

Kohl's
PO Box 3043
Milwaukee, WI 53201-3043

LVNV Funding, LLC its successors and assigns
assignee of Springleaf Financial
Services Of Indiana, Inc.
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Labcorp of America
PO Box 2240
Burlington, NC 27216-2240

Lowe's
PO Box 965005
Orlando, FL 32896-5005

Macy's
PO Box 8218
Mason, OH 45040-8218

Mazem Alsatie MD
800 S Tillotson Ave
Muncie, IN 47304-4529

Morgan & Pottinger
2401 Stanley Gault Pkwy
Louisville, KY 40223-4175

Morris Hardwick Schneider LLC
9409 Philadelphia Rd
Rosedale, MD 21237-4103

Muncie Dental Care
1804 W McGalliard Rd
Muncie, IN 47304-2209

Muncie Post Office Credit Union
501 W. Memorial Drive
PO Box 2061
Muncie, IN 47307-0061

Mutual Bank
4701 E Jackson St
Muncie, IN 47303-4400

NAPUS FCU
PO Box 1416
Alexandria, VA 22313-1416

NAPUS FCU
PO Box 148
Alexandria, VA 22313-0148

NCEP, LLC
P.O. Box 165028
Irving, TX 75016-5028

NCEP, LLC
by AIS Data Services, LP as agent
PO Box 4138
Houston, TX 77210-4138

Northland Group
PO Box 390846
Minneapolis, MN 55439-0846

One West Bank
888 E Walnut St
Pasadena, CA 91101-1895

OneWest Bank, FSB
PO Box 829009
Dallas, TX 75382-9009

Open Door Health Services
333 S Madison St
Muncie, IN 47305-2465

Overhead Door Co of Indy Inc
8811 Bash St
Indianapolis, IN 46256-1276

PNC BANK
PO BOX 94982
CLEVELAND, OHIO 44101-4982

PNC Bank
2730 Liberty Ave
Pittsburgh, PA 15222-4747

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

```
Quantum3 Group LLC as agent for          RMS                                     Santander
ACE Cash Express INC                     PO Box 280431                           5201 Rufe Snow Dr
PO Box 788                               East Hartford, CT 06128-0431            North Richland Hills, TX 76180-6036
Kirkland, WA  98083-0788


Santander                                Santander Consumer USA                 Seagraves Chiropractor
8585 N Stemmons Fwy #1000                Po Box 560284                           3417 W Bethel Ave
Dallas, TX 75247-3822                    Dallas, TX 75356-0284                   Muncie, IN 47304-5472


(p)SPRINGLEAF FINANCIAL SERVICES         State Auto Insurance                   The Imaging Center
P O BOX 3251                             PO Box 182738                           PO Box 1180
EVANSVILLE IN 47731-3251                 Columbus, OH 43218-2738                 Sharpsburg, GA 30277-0964


Transworld Systems                       U.S. Trustee                           Unifund CCR LLC
PO Box 17221                             101 W. Ohio St.. Ste. 1000             10625 Techwoods Cir
Wilmington, DE 19850-7221                Indianapolis, IN 46204-1982            Cincinnati, OH 45242-2846


Urology Association                      Vengroff Williams                      Jennifer Camille Estep
2525 University Avenue #504              PO Box 4155                            9051 S CR 600 E
Muncie, IN 47303-3409                    Sarasota, FL 34230-4155                Selma, IN 47383-9385


John Morgan Hauber                       Mark S. Zuckerberg                     Shawn Lee Estep
Office of John M. Hauber, Chapter 13 Tru Law Office of Mark S Zuckerberg, P.C.  9051 S CR 600 E
151 N. Delaware St. Ste. 1400            429 N Pennsylvania St Ste 100          Selma, IN 47383-9385
Indianapolis, IN 46204-2521              Indianapolis, IN 46204-1873
```

          The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
          by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Portfolio Recovery Assoc. LLC            (d)Portfolio Recovery Assoc. LLC       (d)Portfolio Recovery Associates, LLC
120 Corporate Blvd                       PO Box 12914                           POB 12914
Norfolk, VA 23502                        Norfolk, VA 23541                      Norfolk VA 23541


Springleaf Financial Services
PO Box 3251
Evansville, IN 47731-3251
```

          The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)OneWest Bank N.A.,

End of Label Matrix
Mailable recipients    77
Bypassed recipients     1
Total                  78

KINGS

Exhibit A



JANE LASATER
DELAWARE COUNTY RECORDER
RECORDED ON
04/19/2007        03:39:53PM
REC FEE:   68.00
PAGES:   28

Return To:
INDYMAC BANK, F. S. B.
3465 EAST FOOTHILL BLVD./ATTN: DOCUMENT MANAGEMENT
PASADENA, CA 91107

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          April 5, 2007
together with all Riders to this document.
(B) "Borrower" is
SHAWN L ESTEP AND JENNIFER C ESTEP HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

INDIANA -Single Family- Fannie Mae/Freddie  Mac UNIFORM  INSTRUMENT                    Form 3015  1/01

Page 1 of 15                          Initials: SLE  JCE
           VMP Mortgage Solutions, Inc.

(C) "Lender" is
INDYMAC BANK, F. S. B.
Lender is a a federally chartered savings bank
organized and existing under the laws of          THE UNITED STATES OF AMERICA
Lender's address is 155 NORTH LAKE AVENUE
PASADENA, CA 91101
Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated          April 5, 2007
The Note states that Borrower owes Lender
Three Hundred Four Thousand and 00/100                                                          Dollars
(U.S. $ 304,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and
to pay the debt in full not later than          May 1, 2038

(E) "Property" means the property that is described below under the heading  "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] Construction Rider |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are
imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar
paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to
order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-
of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated
clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party
(other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the
Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any
amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the

| County | of | DELAWARE |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

Parcel ID Number ▮▮▮▮▮▮▮▮                                which currently has the address of

PARCEL#: 1609400010000                                                                    [Street]
UNITY ROAD 600 EAST

SELMA                                                [City] , Indiana     47383     [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Page 3 of 15          Initials: _TCL ILS_          Form 3015   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.

Page 4 of 15          Initials: _ZC ShE_          Form 3015  1/01

These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____    Form 3015  1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4 .

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.

Page 6 of 15     Initials: _____     Form 3015  1/01

During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials: _TCC SNE_    Form 3015  1/01

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by any insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials: _____

Form 3015   1/01

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _JCL ShE_

Form 3015   1/01

· Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

Initials _JCL SLE_        Form 3015  1/01

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Page 11 of 15

Initials: _JCC SLE_

Form 3015 1/01

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _KL SLE_

Form 3015   1/01

· Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

Initials: _JC_ _SLC_

Form 3015   1/01

·BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                                        -Borrower
                                                SHAWN L ESTEP

_____                    _____ (Seal)
                                                                        -Borrower
                                                JENNIFER C ESTEP

_____ (Seal)          _____ (Seal)
                    -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                               -Borrower

Form 3015   1/01

STATE OF INDIANA,

    On this _Delaware_ County ss:

    On this _6_ day of _April, 2007_, before me, the undersigned, a Notary Public in and for said County, personally appeared _Shawn R. Estep and Jennifer C. Estep, Husband And Wife_

and acknowledged the execution of the foregoing instrument.
    WITNESS my hand and official seal.

My Commission Expires:

                                                      _____
                                                    Notary Public
                                                    County of Residence:

                                                TONI A. MILLER
                                  NOTARY PUBLIC STATE OF INDIANA
                                      DELAWARE COUNTY
                                COMMISSION EXPIRES 10-26-07

This instrument was prepared by:
INDYMAC BANK, F. S. B.
3465 EAST FOOTHILL BLVD.
PASADENA, CA 91107
VERA MCBUR

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. _____

                                    Page 15 of 15        Initials:                  Form 3015  1/01

# LEGAL DESCRIPTION

See Attached Legal Description

Tract I:

A part of the Northwest Quarter of the Southeast Quarter of Section 9, Township 19 North, Range 11 East, described as follows:

Commencing at an existing cornerstone marking the Southwest corner of the Northwest Quarter of the Southeast Quarter of Section 9, Township 19 North, Range 11 East, and running thence North 01 degree 13 minutes 33 seconds West (assumed bearing) along the West line of said Quarter-Quarter Section 1339.16 feet to a point marking the Northwest corner of the said Quarter-Quarter Section; thence South 89 degrees 26 minutes 11 seconds East along the North line of the said Quarter-Quarter Section 1324.24 feet to a point marking the Northeast corner of the said Quarter-Quarter Section; thence South 01 degree 00 minute 58 seconds East along the East line of the said Quarter-Quarter Section 438.34 feet to a point marking the POINT OF BEGINNING of this description; thence continuing South 01 degree 00 minute 58 seconds East along the East line of the said Quarter-Quarter Section 407.07 feet to a point; thence NOrth 89 degrees 26 minutes 11 seconds West on a line parallel with the North line of the said Quarter-Quarter Section a distance of 761.33 feet to a point; thence North 03 degrees 56 minutes 00 second West a distance of 39.91 feet to a point; thence North 54 degrees 40 minutes 00 second West a distance of 225.85 feet to a point; thence North 35 degrees 01 minute 00 second East a distance of 140.26 feet to a point; thence North 22 degrees 55 minutes 00 second East a distance of 132.64 feet to a point; thence South 89 degrees 26 minutes 11 seconds East on a line parallel with the North line of the said Quarter-Quarter Section a distance of 808.97 feet to the point of beginning.
Being a part of the Northwest Quarter of the Southeast Quarter of Section 9, Township 19 North, Range 11 East, and containing 7.977 Acres, more or less. Subject to legal rights-of-way.

Tract II:

# ADJUSTABLE   RATE RIDER
### (1 Month Libor Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 5th day of        April      , 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

INDYMAC BANK, F. S. B.
a federally chartered savings bank                                          (the "Lender") of
the same date and covering the Property described in the Security Instrument and located at:

PARCEL#: 1609400010000
UNITY ROAD 600 EAST
SELMA, IN 47383

[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note contains the following provisions:
2.    INTEREST
(A) Construction and Permanent Phases.
This Note, as amended by the attached Residential Construction Loan Addendum Amending Note (the "Addendum"), represents both a construction/home improvement loan and a permanent mortgage loan. During the Construction Period of the loan, the Note Holder will advance funds in accordance with the Residential Construction Loan Agreement. The "Construction Period" is defined as the period beginning on the date of the Note and ending on the first day of the month preceding the due date of the first monthly payment of principal and interest stated in the Note ("Permanent Loan Commencement Date") if Completion (as defined in the Residential Construction Loan Agreement) has occurred before that date in accordance with the Residential Construction Loan Agreement. If Completion has not occurred by that date, I will be in default under this Addendum and under the Note. If Completion has occurred prior to the Permanent Loan Commencement Date, then the loan evidenced by the Note will automatically become a permanent mortgage loan on the Permanent Loan Commencement Date,

Indymac Bank
CTP 1 Month LIBOR Adjustable Rate Rider - Multistate
Page 1 of 5



and the provisions of this Addendum will cease to be in effect and all terms and conditions of the loan will be as set forth in the Note on the Permanent Loan Commencement Date.

**(B) Interest Rate**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest beginning on the Permanent Loan Commencement Date at the Initial Interest Rate. The "Initial Interest Rate" will be calculated by adding the Index described in Section 2(E) of this Note that is most recently available as of the day that is 15 days prior to the Permanent Loan Commencement Date, to the Margin that is described in Section 2(F), except that the Initial Interest Rate may not be more than the Maximum Rate shown in Section 2(D) of this Note. The interest rate I pay may change.

The interest rate required by Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(C) Interest Rate Change Dates**
The interest rate I will pay may change on the first day of        June    ,  2008    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(D) Interest Rate Limit**
My interest rate will never be greater than        12.950%.

**(E) Index**
The Index is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(F) Calculation of Interest Rate Changes**
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding        One and Seven Eighths        percentage point(s) (      1.875  %) (the "Margin") to the Current Index. Subject to the limit stated in Section 2(D) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3.   **PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on
June 1                ,  2008    .
I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on

May 1, 2038                    ,



I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

155 NORTH LAKE AVENUE
PASADENA, CA 91101
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Following the Permanent Loan Commencement Date, each of my initial monthly payments will be in the amount calculated as follows (the "Initial Payment Amount"). After determining the Initial Interest Rate, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Permanent Loan Commencement Date in full on the maturity date at my Initial Interest Rate in substantially equal payments. My Initial Payment Amount will change in accordance with Sections 3(C) and 3(D) of this Note.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st     day of     June     ,     2009     , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date.

The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

Page 3 of 5

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred Ten percent ( 110.000%) ($ 334,400.00 ) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Page 4 of 5



If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
                        -Borrower
SHAWN L ESTEP

_____ (Seal)
                        -Borrower
JENNIFER C ESTEP

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

Page 5 of 5

TO BE RECORDED WITH THE SECURITY INSTRUMENT

Date:  April 5, 2007

## RESIDENTIAL  CONSTRUCTION  LOAN RIDER  WITH SECURITY  AGREEMENT  AND FIXTURE  FINANCING  STATEMENT (Indiana)

Words used in this Rider are defined below. Words in the singular mean and include the plural and vice versa.

"Agreement" means the Residential Construction Loan Agreement.

"Borrower" is Shawn L Estep, Jennifer C Estep

"Borrower's Funds Account" means any and all construction loan accounts established pursuant to the Agreement and held by Lender and used to deposit additional funds provided by Borrower.

"Contractor" is

and its successors or assigns.

"Improvements" are the improvements made to a single family residence *or* new construction of a single family residence.

"Lender" is INDYMAC BANK, F. S. B.,
a federally chartered savings bank
and its successors or assigns.

"Note" means the promissory note of even date signed by Borrower in favor of Lender.

"Property" means the property commonly known as
PARCEL#: 1609400010000, UNITY ROAD 600 EAST
SELMA, IN 47383

"Security Instrument" means the Deed of Trust/Mortgage/Security Deed/Security Instrument of even date signed by Borrower in favor of Lender.

  THIS RESIDENTIAL CONSTRUCTION LOAN RIDER shall be deemed to amend and supplement the Security Instrument of the same date given by the Borrower to secure Borrower's Note to Lender of the same date and covering the Property described in the Security Instrument.

IndyMac Bank, F.S.B.
Residential Construction  Loan Rider to Security Instrument  - Indiana
Page 1 of 6





**AMENDED AND ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.  **Residential Construction Loan Agreement.** Borrower agrees to comply with the covenants and conditions of the Agreement between Borrower, Lender and Contractor, which is incorporated herein by this reference and made a part of this Security Instrument. The Agreement provides for the construction of certain Improvements on the Property. All advances made by Lender pursuant to the Agreement shall be an indebtedness of Borrower secured by this Security Instrument as amended, and such advances may be obligatory under the terms of the Agreement. The Security Instrument secures the payment of all sums and the performance of all covenants required by Lender in the Agreement. Upon the failure of Borrower to keep and perform all the covenants, conditions and agreements of the Agreement, the principal sum and all interest and other charges provided for in the loan documents and secured hereby shall, at the option of the Lender, become due and payable.

2.  **Security Instrument.** This Security Instrument is a "construction mortgage" securing an obligation incurred for the construction of Improvements on the Property including the acquisition cost of the Property, if any, and any notes issued in extension, renewal, or substitution thereof. Borrower affirms, acknowledges and warrants that prior to the recordation of this Security Instrument, as amended, in the appropriate Real Property Records of the State of Indiana, no Improvements contemplated by the Loan Agreement have been constructed, no work has been performed, and no materials have been ordered or delivered.

3.  **Future Advances.** Borrower hereby acknowledges and agrees that the indebtedness secured by the Security Instrument includes, and that the Security Instrument is given to secure, advances that may be made by Lender to Borrower and obligations to Lender that may be incurred by Borrower after the execution of the Security Instrument ("future advances") and that the Security Instrument shall secure all future advances of every kind and whenever occurring, provided however, that the maximum amount of unpaid future advances outstanding at any one time shall not exceed $   304,000.00   such maximum amount being stated herein pursuant to and in accordance with Indiana Code §32-29-1-10 and not being a commitment by Lender to make future advances, and provided, further, that the maximum amount of the indebtedness secured by the Security Instrument at any one time in all events shall not exceed $304,000.00               . To the extent that moneys advanced by Lender are used to pay for the costs of acquiring the Property, this mortgage shall be a purchase money security interest.

4.  **Disbursements to Protect Security.** All sums disbursed by Lender prior to completion of the Improvements to protect the security of this Security Instrument, up to the principal amount of the Note and any future advances, shall be treated as disbursements pursuant to the Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless the collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefore.



5.   **Assignment of Rights or Claims.** From time to time as Lender deems necessary to protect Lender's interest, Borrower shall, upon request of Lender, execute, acknowledge before a notary, and deliver to Lender, assignments of any and all rights or claims which relate to the construction on the Property.

6.   **Breach by Borrower.** In case of breach by Borrower of the covenants and conditions of the Agreement, Lender, at Lender's option, with or without entry upon the Property, (a) may invoke any of the rights or remedies provided in the Agreement, or (b) may accelerate the sums secured by this Security Instrument.

7.   **Termination of Agreement upon Amortization.** Upon the permanent loan commencement date, the terms of the Agreement (except to the extent Lender is indemnified therein) shall be null and void, and there shall be no claim or defense arising out of or in connection with the Agreement against the obligations of the Note and this Security Instrument.

8.   **Property.** The property covered by this Security Instrument includes the property described or referred to in this Security Instrument, together with the following, all of which are referred to as the "Property." The portion of the Property described below which constitutes real property is sometimes referred to as the "Real Property." The portion of the Property which constitutes personal property is sometimes referred to as the "Personal Property," listed as follows:

Any and all buildings, improvements (provided in the Agreement or otherwise), and tenements now or hereafter erected on the Property; any and all heretofore and hereafter vacated alleys and streets abutting the Property, easements, rights, appurtenances, rents (subject however to any assignment of rents to Lender), leases, royalties, mineral, oil and gas rights and profits, water, water rights and water stock appurtenant to the Property (to the extent they are included in Borrower's fee simple title); any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the Property and all replacements and accessions of them, including, but not limited to those for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air and light; security and access control apparatus; plumbing and plumbing fixtures; refrigerating, cooking and laundry equipment; carpet, floor coverings and interior and exterior window treatments; furniture and cabinets; interior and exterior sprinkler plant and lawn maintenance equipment; fire prevention and extinguishing apparatus and equipment, water tanks, swimming pool, compressor, vacuum cleaning system, disposal, dishwasher, range, and oven, any shrubbery and landscaping; any and all plans and specifications for development of or construction of Improvements upon the Property; any and all contracts and subcontracts relating to the Property; any and all accounts, deposit accounts, contract rights, instruments, documents, payment and general intangibles, and tangible and electronic chattel paper arising from or by virtue of any transactions related to the Property; any and all permits, licenses, franchises, certifications, and other rights and privileges obtained in connection with the Property; any and all products and proceeds arising from or by virtue of the sale, lease, or other disposition of any of the Property; any and all proceeds payable or to be payable under each policy of insurance relating to the Property; any and all proceeds arising from the taking of all or part of the Property for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof; all building permits, certificates of occupancy, certificates of compliance, any right to use utilities of any kind including water, sewage, drainage and any other utility rights, however arising whether private or public, present or future, including any reservation, permit, letter, certificate, license, order, contract or otherwise and any other permit, letter, certificate, license, order, contract or other document or approval received from or issued by any governmental entity, quasi-governmental entity common carrier, or public utility in any way relating to any part of the Property or the Improvements, fixtures and equipment thereon; all other interests of every kind and character which Borrower now has or at any time hereafter acquires in and to the Property, including all other items of property and rights described elsewhere in this Security Instrument.

The Personal Property also includes the Borrower's Funds Account, together with any interest accruing thereon and proceeds thereof.



9. **Security Agreement and Financing Statement.** This Security Instrument shall be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in, to and under the Personal Property, under and within the meaning of applicable statutes of this state, as well as a Mortgage and/or a Deed of Trust granting a lien upon and against the Real Property. In the event of any foreclosure sale all of the Real and Personal Property may, at the option of Lender, be sold as a whole or in any part. It shall not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender shall have all the rights, remedies and recourses with respect to the Personal Property afforded to a "Secured Party" by the applicable statutes of this state in addition to and not in limitation of the other rights and recourse afforded Lender under this Security Instrument. Borrower shall, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon any property, real and/or personal, described in this Security Instrument, (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower to perform or observe any of the provisions or covenants in this Security Instrument; or (v) any actions taken by Lender for any reason whatsoever in any case or proceeding under Chapter 7, 11, or 13 of the Bankruptcy Code or any successor statute thereto, including, but not limited to, action taken with respect to issues particular to federal bankruptcy law.

Lender is authorized, at its election, at any time after the delivery of this Security Instrument, to file one or more financing statements (including fixture filings) covering the Personal Property, and the recording of the Security Instrument, as amended, shall be effective as a financing statement filed as a fixture filing.

10. **Completion.** Lender shall not be responsible for the completion of the Improvements, and shall not in any way be considered a guarantor or surety of performance by Borrower. In the event the Improvements are not completed according to the plans and specifications approved by Lender, and it is determined for whatever reason the Lender does not have a lien arising by or through Borrower, then Lender shall have a valid lien for its loan amount, less the amount reasonably necessary to complete the Improvements, or in such event Lender, at its option, shall have the right to complete the Improvements, and the lien shall be valid for the loan amount.

11. **Invalid Provisions.** If any provision of this Security Instrument is declared invalid, illegal, or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provision shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

12. **Address.**

The name and address of the Borrower/Debtor during construction of the Improvements is:

Shawn L Estep, Jennifer C Estep

6107 EAST CAROLYN DRIVE
MUNCIE, IN 47303



13.    **Other Provisions.** The following notice is required by law:

IMPORTANT NOTICE: YOU ARE HEREBY NOTIFIED THAT ANY PERSON PERFORMING LABOR ON YOUR PROPERTY OR FURNISHING MATERIALS FOR THE CONSTRUCTION, REPAIR, OR IMPROVEMENT OF YOUR PROPERTY WILL BE ENTITLED TO A LIEN AGAINST YOUR PROPERTY IF HE IS NOT PAID IN FULL, EVEN THOUGH YOU MAY HAVE PAID THE FULL CONTRACT PRICE TO YOUR CONTRACTOR. THIS COULD RESULT IN YOUR PAYING FOR LABOR AND MATERIALS TWICE. THIS LIEN CAN BE ENFORCED BY THE SALE OF YOUR PROPERTY. TO AVOID THIS RESULT, YOU MAY DEMAND FROM YOUR CONTRACTOR LIEN WAIVERS FROM ALL PERSONS PERFORMING LABOR OR FURNISHING MATERIALS FOR THE WORK ON YOUR PROPERTY. YOU MAY WITHHOLD PAYMENT TO THE CONTRACTOR IN THE AMOUNT OF ANY UNPAID CLAIMS FOR LABOR OR MATERIALS. YOU ALSO HAVE THE RIGHT TO DEMAND FROM YOUR CONTRACTOR A COMPLETE LIST OF ALL LABORERS AND MATERIAL SUPPLIERS UNDER YOUR CONTRACT, AND THE RIGHT TO DETERMINE FROM THEM IF THEY HAVE BEEN PAID FOR LABOR PERFORMED AND MATERIALS FURNISHED.

The name and address of the Lender/Secured Party is:

INDYMAC BANK, F. S. B.,
a federally chartered savings bank
155 NORTH LAKE AVENUE
PASADENA, CA 91101



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Residential Construction Loan Rider.

_____ (Seal)
SHAWN L ESTEP                -Borrower

_____ (Seal)
JENNIFER C ESTEP            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

**ATTENTION OFFICIAL RECORDER OF INSTRUMENTS:** This instrument covers goods that are or are to become fixtures on the described Property herein and is to be filed for record in the County Recorder's records where mortgages on real estate are recorded. Additionally, this instrument should be appropriately indexed, not only as a mortgage but as a financing statement covering goods that are or are to become fixtures on the described Property herein. The mailing address of the Borrower (Debtor) and Lender (Secured Party) are set forth in this instrument.

———— [Please See Attached Acknowledgment(s)] ————

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Residential Construction Loan Rider.

_Shawn L. Estep_ _____ (Seal)
SHAWN L ESTEP -Borrower

_Jennifer C. Estep_ _____ (Seal)
JENNIFER C ESTEP -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

**ATTENTION OFFICIAL RECORDER OF INSTRUMENTS:** This instrument covers goods that are or are to become fixtures on the described Property herein and is to be filed for record in the County Recorder's records where mortgages on real estate are recorded. Additionally, this instrument should be appropriately indexed, not only as a mortgage but as a financing statement covering goods that are or are to become fixtures on the described Property herein. The mailing address of the Borrower (Debtor) and Lender (Secured Party) are set forth in this instrument.

─────────────── [Please See Attached Acknowledgment(s)] ───────────────

Page 5 of 6



# ADJUSTABLE   RATE   NOTE
## (1 Month LIBOR Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

| April 5, 2007 | PASADENA | , | California |
|---|---|---|---|
| [Date] | [City] | | [State] |

PARCEL#: 1609400010000
UNITY ROAD 600 EAST
SELMA, IN 47383

[Property  Address]

## 1.   BORROWER'S  PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 304,000.00                     (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

INDYMAC BANK, F. S. B.,
a federally chartered savings bank

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

### (A) Construction & Permanent Phases

This Note, as amended by the attached Residential Construction Loan Addendum Amending Note (the "Addendum"), represents both a construction/home improvement loan and a permanent mortgage loan. During the Construction Period of the loan, the Note Holder will advance funds in accordance with the Residential Construction Loan Agreement. The "Construction Period" is defined as the period beginning on the date of the Note and ending on the first day of the month preceding the due date of the first monthly payment of principal and interest stated in the Note ("Permanent Loan Commencement Date") if Completion (as defined in the Residential Construction Loan Agreement) has occurred before that date in accordance with the Residential Construction Loan Agreement. If Completion has not occurred by that date, I will be in default under the Addendum and under this Note. If Completion has occurred prior to the Permanent Loan Commencement Date, then the loan evidenced by this Note will automatically become a permanent mortgage loan on the Permanent Loan Commencement Date, and the provisions of the Addendum will cease to be in effect and all terms and conditions of the loan will be as set forth in this Note on the Permanent Loan Commencement Date.

### (B) Interest Rate

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest beginning on the Permanent Loan Commencement Date at the Initial Interest Rate. The "Initial Interest Rate" will be calculated by adding the Index described in Section 2(E) of this Note that is most recently available as of the day that is 15 days prior to the Permanent Loan Commencement Date, to the Margin that is described in Section 2(F), except that the Initial Interest Rate may not be more than the Maximum Rate shown in Section 2(D) of this Note. The interest rate I pay may change.

The interest rate required by Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Initials: _____          _____

Indymac  Bank
MULTISTATE  1 MONTH  LIBOR  ADJUSTABLE  RATE NOTE

Form HCL 1022
04/06



**(C) Interest Rate Change Dates**

The interest rate I will pay may change on the    1st   day of    June    ,   2008   , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(D) Interest Rate Limit**

My interest rate will never be greater than    12.950%.

**(E) Index**

The Index is the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in *The Wall Street Journal*. The most recent Index figure available as the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(F) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding One and Seven Eighths                     percentage point(s) (    1.875 %) (the "Margin") to the Current Index. Subject to the limit stated in Section 2(D) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1st   day of each month beginning on    June 1   ,   2008   . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on    May 1, 2038   , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   155 NORTH LAKE AVENUE
PASADENA, CA 91101                              or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Following the Permanent Loan Commencement Date, each of my initial monthly payments will be in the amount calculated as follows (the "Initial Payment Amount"). After determining the Initial Interest Rate, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Permanent Loan Commencement Date in full on the maturity date at my Initial Interest Rate in substantially equal payments. My Initial Payment Amount will change in accordance with Sections 3(C) and 3(D) of this Note.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the    1st   day of    June   , 2009                , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in Full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

Form  HCL  1022
04/06

*ShE. JCL*

 

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred  Ten percent (               110.000%) of the principal amount I originally borrowed. Because of my paying  only limited monthly payments,  the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying  my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially  equal installments at the interest rate effective during the preceding  month.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding  5th Payment Change Date thereafter, I will begin paying  the Full Payment as my monthly payment until my monthly payment changes  again. I also will begin paying  the Full Payment as my monthly payment on the final Payment Change Date.

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes  in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question  I may have regarding  the notice.

**5.  BORROWER'S  RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing  so. I may not designate  a payment as a prepayment if I have not made all the monthly payments  due under this Note.

I may make a full prepayment or partial prepayments without paying  any prepayment charge. The Note Holder will use my prepayments  to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply  my prepayment  to the accrued and unpaid interest on the prepayment before applying  my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes  in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following  my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection  with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary  to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing  the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.  BORROWER'S  FAILURE TO PAY AS REQUIRED**

**(A) Late Charges  for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of          15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Form HCL 1022
04/06

*ShE. JCC*

 

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Form  HCL 1022
04/06



To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower
SHAWN L ESTEP                                    JENNIFER C ESTEP

_____ (Seal)          ~~Pay To The Order Of~~ _____ (Seal)
                                -Borrower                                         -Borrower

                                                 Without Recourse
                                                 IndyMac Bank, F.S.B.
                                                 By:
_____ (Seal)          _____ (Seal)
                                -Borrower        Vartan Derbedrossian              -Borrower
                                                 Vice President

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

                                                              [Sign Original Only]



Form HCL 1022
04/06

DATE: April 5, 2007



### RESIDENTIAL   CONSTRUCTION   LOAN
### ADDENDUM   AMENDING   NOTE
### (Indiana)

THIS Addendum is incorporated into and shall be deemed to amend and supplement the Note ("Note"), of even date herewith, given by the undersigned Borrower ("Borrower" whether one or more) to evidence Borrower's indebtedness to the Note Holder, which indebtedness is secured by that certain Deed of Trust ("Security Instrument"), of even date herewith, covering the premises described in the Security Instrument. Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees to the following:

### 1.   CONSTRUCTION/PERMANENT   LOAN

This Note, as amended by this Addendum, represents both a construction/home improvement loan and a permanent mortgage loan. During the Construction Period of the loan, the Note Holder will advance funds in accordance with the Residential Construction Loan Agreement. The "Construction Period" is defined as the period beginning on the date of the Note and ending on the first day of the month preceding the due date of the first monthly payment of principal and interest stated in the Note ("Permanent Loan Commencement Date") if Completion (as defined in the Residential Construction Loan Agreement) has occurred before that date in accordance with the Residential Construction Loan Agreement. If Completion has not occurred by that date, I will be in default under this Addendum and under the Note. If Completion has occurred prior to the Permanent Loan Commencement Date, then the loan evidenced by the Note will automatically become a permanent mortgage loan on the Permanent Loan Commencement Date, and the provisions of this Addendum will cease to be in effect and all terms and conditions of the loan will be as set forth in the Note and Security Instrument on the Permanent Loan Commencement Date.

Borrower agrees that in the event Lender grants an extension to the Construction Period, Borrower may be required to: (i) pay an extension fee of up to one-half percent (0.5.%) per month (or portion of a month) that Lender extends the required Completion Date (The extension fee shall not be prorated for any partial month); and/or (ii) increase the Note interest rate during the Construction Period up to *two percent (2%) per annum* on a fixed rate note and increase the margin up to *two percent (2%)* on a variable rate note; and/or (iii) add a 3 year Pre-Payment Penalty to the Note which Pre-Payment Penalty period will commence on the date of the Note; and/or (iv) terminate the interest rate commitment lock on the Permanent Loan.

### 2.   INTEREST

(A) Interest During the Construction Period

I will pay interest only on the amount advanced at the yearly rate of 6.750 %. The interest rate I will pay may change. The interest rate I will pay may change on the 1st day of June, 2007 and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding One and Seven Eighths percentage points ( 1.875 %) to the Current Index, as defined below. The result of this addition will be my new interest rate until the next Interest Rate Change Date. The Index shall be the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in the Wall Street Journal. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index." If the Index is no longer available, the Note Holder will choose a new index that is based on comparable information. The Note Holder will give me notice of this choice. Note Holder will calculate interest by applying a daily interest rate (determined by dividing the yearly rate by 360) to the actual outstanding balance for each day (calculating each day's outstanding balance by taking the beginning balance for that day and adding any advances made that day and subtracting any payments received or credits for that day) in the billing period, and by adjusting each billing period to equal 30 days as follows: (i) for billing periods of 31 days, Note Holder will calculate interest only for the first 30 days and will ignore the 31st day, and (ii) for a billing period of 28 or 29 days, Note Holder will calculate interest for the first 28 or 29 days in the normal manner, and will calculate interest for the remaining one or two days of the balance for such remaining one or two days of the billing period. Note Holder will calculate the interest due for each month and will mail to me a statement of the amount of interest due. I can determine the amount of interest due at any time by calling the number given to me by the Note Holder or Note Holder may permit me to access an Internet site designated by the Note Holder for such information. I will make payments each month in the amount of the interest accrued for the prior month on or before the first (1st) day of each month.

IndyMac Bank
Residential Construction Loan Addendum Amending Note - ARM Const. Period - Indiana
Page 1 of 4
VMP Mortgage Solutions, Inc.

HCL 1024(IN)
09/06



Interest will accrue on a daily basis until payment is received, and all accrued but unpaid interest for the Construction Period shall be due and payable on the Permanent Loan Commencement Date. I agree that to the extent the Loan Budget Worksheet/Line Item Cost Breakdown, as defined in the Residential Construction Loan Agreement, includes undisbursed funds allocated to interest reserve, Note Holder is authorized, in its discretion, to establish a interest reserve from the proceeds of the loan evidenced by the Note, or from the Borrower's Funds Account (as defined in the Residential Construction Loan Agreement), the amount of which interest reserve shall be established by Note Holder in its sole and absolute discretion, and Note Holder shall use such interest reserve to pay interest on the Note as it becomes due. I may, in my sole option, pay accrued interest each month by check made payable directly to Note Holder, but in the event such payment is not received from me by the scheduled payment date, I will be deemed not to have exercised such option for such interest payment, and Note Holder shall pay such interest payment from the interest reserve. Amounts advanced by Note Holder from the interest reserve shall accrue interest at the rates from time to time in effect hereunder.

**(B) Option to Choose Alternative Permanent Product**

I have a one-time option to choose an alternative permanent loan product at any time during the 30-day period immediately preceding the Permanent Loan Commencement Date if Completion (as defined in the Residential Construction Loan Agreement) has occurred before that date in accordance with the Residential Construction Loan Agreement and if there is no default under the Note, this Addendum or the Residential Construction Loan Agreement. If I choose to exercise this option, I may select another permanent phase loan product offered at the time I choose to exercise the option at the rates and under the terms and conditions that product is then being offered. If I exercise this option, I will sign a loan modification agreement and, if requested by Note Holder, a new Note reflecting the terms and conditions of the product that I have chosen. I understand that the terms and conditions, including interest rates of products that are offered change from time to time, and the terms and conditions, including interest rates of products that are offered at the time my option is effective may not be as attractive to me as the terms and conditions, including interest rates of products that are available at the time I sign this Addendum. If I want to exercise this option, I will notify the Note Holder in writing prior to the end of my option period, and if I do not so notify the Note Holder or if I fail for any reason to execute the required modification documents prior to the end of my option period, then the original terms and conditions of the Note will be the terms and conditions of the permanent phase of my loan beginning on the Permanent Loan Commencement Date.

**(C) Permanent Phase Rate:**

During the Permanent Phase I will pay interest ("Permanent Phase Rate") at the rate set forth in Section 2 of the Note.

3.  **ADVANCES**

In the event Completion has not occurred for any reason prior to the required Completion Date specified in the Residential Construction Loan Agreement, I will be in default under the Note and this Addendum, and the Note Holder may choose any of the remedies available to it under applicable law. In such event, however, Note Holder shall have the option, in its sole and absolute discretion, to permit the loan to convert to a permanent loan as follows: (i) Note Holder shall make any remaining advances of construction funds under the Residential Construction Loan Agreement into an escrow or pledge account established for such purpose, (ii) funds may be transferred from such escrow or pledge account to the Direct Cost Disbursement Account upon Note Holder's approval and in accordance with Note Holder's instructions and upon satisfaction of any conditions for such disbursement in accordance with the Residential Construction Loan Agreement, (iii) the terms and conditions of the Residential Construction Loan Agreement shall continue until Completion has occurred, (iv) I will make payments of principal and interest on the entire amount advanced (not just on the amount disbursed) beginning on the scheduled Permanent Loan Commencement Date as if Completion had occurred as scheduled. Note Holder may require me to sign any documents it deems necessary or appropriate to effect such an arrangement, including documents granting Note Holder a security interest in the funds advanced, as a condition to agreeing to permit the conversion of my loan to a permanent loan.

In the event that Borrower requests and Lender approves a "Cash Out" payment at the time of the Permanent Loan Commencement Date, the Borrower will: execute a Modification Agreement and Security Instrument modifying the terms of the Permanent Loan Documentation in accordance with the terms of the Cash Out payment; pay any funds due under the Residential Construction Loan Addendum Amending Note; pay any amounts necessary to obtain a title guarantee that includes the Cash Out payment; and pay any recording fees to amend the Note and Security Instrument.

HCL 1024(IN)
09/06

**4.  LATE CHARGES**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** **calendar days** after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 % of my** overdue payment. I will pay this late charge promptly but only once on each late payment.

**5.  EVENTS OF DEFAULT AND ACCELERATION OF THE DEBT**

Note Holder may declare the entire unpaid principal balance and accrued interest due and payable under the terms of the Note, as amended by this Addendum if any payment of interest is not made when due during the Construction Period or if default should occur under any covenant, condition or agreement contained in the Loan Documents. The definition of Loan Documents includes the Note, as amended by this Addendum, Security Instrument securing the Note as amended and the Residential Construction Loan Agreement. Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Addendum to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**6.  CONFLICTS**

If any term or provision of this Addendum shall be in conflict with any term or provision of the Note, the term or provision of this Addendum shall control. This Addendum shall be interpreted under the laws of **Indiana** .
Any provisions of this Addendum adjudged to be invalid shall be deemed amended from it, with the remainder of the provisions to be in full force and effect. Any remedies or rights of Note Holder expressed in this Addendum are cumulative of, and not exclusive of any other remedies and rights. Except as amended or supplemented hereby, the terms and provisions of the above referenced Note shall remain unchanged and in full force and effect.

**7.  TERMINATION**

After the advance of all funds as necessary to complete the improvements, completion of the improvements, and the satisfaction of all conditions as described in the Residential Construction Loan Agreement, this Addendum will be null and void and no longer in effect, and any funds remaining in any construction account will be refunded to the Borrower or credited to the principal balance.

**8.  REQUEST FOR MODIFICATION**

If the Lender requests, I will sign a "Modification Agreement" if (i) I prepaid principal during the Construction Period; (ii) Lender agrees to increase the principal amount of my Loan; (iii) Lender has agreed to change the Completion Date or the Maturity Date for my Loan; (iv) I do not complete construction before the Completion Date as provided in my Construction Loan Agreement, or (v) the Lender otherwise requires a Modification Agreement.

**9.  NOTICE OF NO ORAL AGREEMENT**

The written Loan Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**10.  OBLIGATIONS OF PERSONS UNDER THIS ADDENDUM**

If more than one person signs this Addendum, each person is fully and personally obligated to keep all the promises made in this Addendum, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of the Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of the Note, is also obligated to keep all of the promises made in this Addendum. The Note Holder may enforce its rights under this Addendum against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Addendum.

**11.  WAIVERS**

I and any other person who has obligations under the Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

HCL 1024(IN)
09/08

**12.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Addendum or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Addendum.

EXECUTED this ___6___ day of ___April___ ___2007___.

_Shawn L. Estep_     4-6-07     _Jennifer C. Estep_     4-6-07
Borrower                          Date              Borrower                         Date
SHAWN L ESTEP                                    JENNIFER C ESTEP

_____     _____
Borrower                          Date              Borrower                         Date

_____     _____
Borrower                          Date              Borrower                         Date

_____     _____
Borrower                          Date              Borrower                         Date

*[Sign Original Only]*



HCL 1024(IN)
09/06

## ALLONGE TO NOTE

Indymac Loan Number: ███████████████

For purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said Note.

Original Loan Amount:    $304,000.00

Note Date:    April 05, 2007

Borrower(s) Last Name:    ESTEP

Property Address:    9051 S. COUNTY ROAD 600 EAST, SELMA, IN 47383

***********************************************************************

PAY TO THE ORDER OF INDYMAC VENTURE, LLC, WITHOUT RECOURSE

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR INDYMAC BANK, F.S.B.

By: _____
Paul Hoffman, Its Attorney-in-Fact

## ALLONGE TO NOTE

Indymac Loan Number: ███████████████████

For purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said Note.

Original Loan Amount:     $304,000.00

Note Date:     April 05, 2007

Borrower(s) Last Name:     ESTEP

Property Address:     9051 S. COUNTY ROAD 600 EAST, SELMA, IN 47383

*********************************************************************************

PAY TO THE ORDER OF _____,
WITHOUT RECOURSE

Indymac Venture, LLC,
a Delaware Limited Liability Company

By:  Indymac Mortgage Services
     a division of OneWest Bank, FSB
     its servicer

By: _____
     Paul Hoffman
     First Vice President

Exhibit
C

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:
T.D. Services Company
1820 E. First Street, Ste. 210
Santa Ana, CA 92705

JANE LASATER
DELAWARE COUNTY RECORDER
RECORDED ON
07/29/2009    03:11:57PM
REC FEE:  12.00
PAGES:  1

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, FSB ("**Assignor**") does hereby grant, sell, assign, transfer and convey, unto INDYMAC VENTURE, LLC, whose address is: c/o Indymac Mortgage Services, Consumer Lending Division, 888 E. Walnut St., Pasadena, CA 91101, all of Assignor's right, title and interest in, to and under that certain Mortgage dated April 05, 2007 and executed by SHAWN L. ESTEP and JENNIFER ESTEP, to and in favor of Indymac Bank, F.S.B., and recorded on April 19, 2007, in DELAWARE County, State of Indiana, as Document number 2007R10623 (the "Mortgage"), which encumbers the following real property:

        Property Address:  9051 S. COUNTY ROAD 600 EAST SELMA, IN 47383

TOGETHER WITH the note(s) described or referred to in the Mortgage, the construction loan agreement executed in connection therewith, the money due or to become due thereon with interest, and all rights accrued or to accrue thereunder.

THE FOREGOING ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION IN ANY CAPACITY.

IN WITNESS WHEREOF, the undersigned have executed this Corporation Assignment of Mortgage on June 23, 2009.

            FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC
            BANK, F.S.B

            By: _____
                Paul Hoffman, Attorney-in-Fact

## NOTARY ACKNOWLEDGEMENT

State of California            )
County of Los Angeles          )

        On __6/26_____, 2009, before me, J. Garrett Anderson_____, Notary
Public, personally appeared **Paul Hoffman**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

J. GARRETT ANDERSON
Commission # 1613020
Notary Public - California
Los Angeles County
My Comm. Expires Oct 15, 2009

DELAWARE COUNTY RECORDER                                    1 of 1



**JANE LASATER**
**DELAWARE COUNTY RECORDER**
**RECORDED ON**
**02/20/2013 09:43 AM**
**REC FEE: 15.00**
**PAGES: 2**

Recording Requested by
And when recorded mail to:
Grantee's Mailing Address:
One West Bank, FSB
c/o Morris|Hardwick|Schneider, LLC
9409 Philadelphia Road
Baltimore, MD  21237

_____ Space above this line for Recorders use only _____

**IMPORTANT NOTICE**

After having been recorded, this Assignment should be kept with the Note and Mortgage hereby assigned

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to **One West Bank, FSB**, 888 East Walnut Street, Pasadena, CA 91101, all beneficial interest under that certain Mortgage dated April 5, 2007, executed by Jennifer C. Estep and Shawn L. Estep to secure obligations in favor of **Indymac Bank, F.S.B.**, as beneficiary, recorded April 19, 2007 as Instrument Number 2007R10623 in the office records in the Office of the Recorder of Delaware County, Indiana. Said mortgage was assigned to **IndyMac Venture, LLC**, via an Assignment of Mortgage, recorded July 29, 2009, as Instrument Number ████████ in the Office of the Recorder of Delaware County, Indiana.

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part the real property described therein.

Dated: _____ FEB 1 2 2013

IndyMac Venture, LLC

_Terri Hunter_
Signature

Terri Hunter
Printed Name

**Terri Hunter**
**First Vice President REO**
Title

STATE OF: ~~TEXAS~~ ~~TRAVIS~~           )
                                         )
COUNTY OF: _____                         )

On _____ FEB 1 2 2013 _____, before me, the undersigned Notary Public in and for said county, personally appeared _____Terri Hunter_____ personally known to me (or provided to me on the basis of satisfactory evidence) to the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**STACEY FRANCIS**
**Notary Public, State of Texas**
**My Commission Expires**
**July 21, 2016**

_____
Notary Public

Stacey Francis
Printed Name

My Commission Expires: 7-21-16
My County of Residence: Travis

I affirm under the penalties of perjury that I have taken reasonable care to redact each social security number in this document unless required by law. - Jason Eugene Duhn

This instrument prepared by: Jason Eugene Duhn, Morris|Hardwick|Schneider, LLC; 9409 Philadelphia Road, Baltimore, MD 21237 Telephone: 410-284-9600

PAGE 2 OF 2

Exhibit

SIGN AND RETURN

## MODIFICATION AGREEMENT
### (Post Construction Modification - Balloon)

Loan Number: ▮▮▮▮▮▮▮

　　　This Modification Agreement ("Agreement") is made as of February 1, 2011 by SHAWN L. ESTEP AND JENNIFER C. ESTEP, HUSBAND AND WIFE ("Borrower") and INDYMAC VENTURE, LLC, a Delaware limited liability company ("Lender").

Factual Background

　　　1.　　　Under a construction loan agreement dated April 5, 2007 (the "Construction Loan Agreement"), Lender agreed to make a loan (the "Loan") to Borrower. Capitalized terms used here without definition have the meanings given to them in the Construction Loan Agreement.

　　　2.　　　The Loan is evidenced by a Note dated April 5, 2007 (the "Note"), made payable to Lender in the stated principal amount of Three Hundred Four Thousand and 00/100 Dollars (U.S. $304,000.00). The Note is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated as of the date of the Note.

　　　3.　　　As used herein, the term "Loan Documents" means the Construction Loan Agreement, the Note, the Security Instrument, and any other documents executed in connection with the Loan, including those which evidence, guaranty, secure or modify the Loan, as any or all of them may have been amended to date. This Agreement is a Loan Document, and any other document executed by Borrower and Guarantor, if any, in connection with this Agreement is also a Loan Document.

　　　4.　　　Under the terms of the Loan, construction was to have been completed by 2/6/2009, but was not, thereby causing a Borrower default under the Loan Documents. As a result of the default, the Permanent Loan provided for in the Loan Documents is no longer available.

　　　5.　　　Borrower and Lender have agreed to modify the Loan as provided herein below, to (i) provide for an extended term of three (3) years from the date of this Agreement, based on the existing terms applicable during the construction loan phase as modified herein.

　　　6.　　　Borrower and Lender now wish to modify the Loan as set forth below.

## AGREEMENT

Borrower and Lender agree as follows:

A. Termination of Construction Provisions.

-1-

_Borrower(s)' Initials_

Mod Agmt - Extend to Balloon Template.dot

i. The Note is hereby amended by deleting in its entirety the Residential Construction Loan Addendum Amending Note.

ii. By executing this Agreement Borrower acknowledges that Lender shall have no further obligations to Borrower under the terms of the Residential Construction Loan Agreement, including, but not limited to any obligation to advance any funds to Borrower or any other party for any purpose whatsoever. Lender's only obligations to Borrower in connection with the Loan shall be as set forth in the Note and Security Instrument as modified herein. Notwithstanding the foregoing, all of Borrower's agreements and obligations and Lender's rights and remedies under the Residential Construction Loan Agreement shall continue in full force and effect, except as modified herein. The provisions of the Note, Security Instrument and the Residential Construction Loan Agreement not otherwise modified by this Agreement shall continue in full force and effect.

B. Unpaid Principal Balance. As of February 1, 2011, the principal amount payable under the Note and Security Instrument is U.S. $298,336.69. In addition, you owe unpaid interest and other amounts now due totaling $10,487.61 (the "Arrearage"). You agree that the Arrearage shall be added to the current principal balance and the total amount of $308,824.30 shall constitute the new principal balance owed hereunder (the "New Principal Balance"). Interest will accrue and be payable on the New Principal Balance in accordance with the provisions of the Note, as modified herein.

C. Balloon Payment Legend. To the extent not included in the original Note, the Note is amended to include the following Legend:

THIS LOAN IS A BALLOON LOAN AND IS PAYABLE IN FULL AT MATURITY. THIS MEANS THAT YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE AT THE MATURITY DATE, AND LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO REPAY THE LOAN OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

D. Interest Rate and Monthly Payment Amount; Balloon Payment. Sections 2 and 3 of the Note are replaced in their entirety with the following:

-2-

Borrower(s)' Initials

Mod Agmt - Extend to Balloon Template.dot

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of 2.1356%. The interest rate I pay may change in accordance with Section 4 of this Note.

The interest rate required by Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A)    Time and Place of Payments**

I will be required to pay only interest due on the unpaid principal balance by making a payment on the first day of each month beginning on March 1, 2011.  I will make these payments every month until the Maturity Date (defined below).  Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest will be applied to interest before principal.

I will send  my monthly payments to  the following address or to  a different place if required by the Note Holder.

> Indymac Mortgage Services
> a division of OneWest Bank, FSB
> Attn:  Cashiering Dept.
> 6900 Beatrice Drive
> Kalamazoo, MI 49009

**(B)    Amount of Monthly Payments**

My initial monthly payment will be in the amount of U.S. $549.60 until the first Interest Rate Change Date.  On that date and thereafter, my monthly payment will be in an amount sufficient to pay the accrued interest at the rate determined as described in Section 4 of this Note.

**(C)    Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay which may change monthly. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**(D)    Balloon Payment at Maturity Date**

-3-

Borrower(s)' Initials

Mod Agmt - Extend to Balloon Template.dot

On February 1, 2014 (the "Maturity Date"), I will pay all of the principal and interest and any other charges described below that I may owe under this Note. I acknowledge that Lender has no intention or obligation to renew, extend or provide a refinance of this Loan upon Maturity and that my failure to pay the amounts due in full on the Maturity Date will result in my default and the exercise by Lender of its remedies set forth in the Note and Security Instrument.

E. Interest Rate and Payment Changes.  Existing Section 4 of the Note is deleted and new Section 4 is inserted as follows:

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of March, 2011 and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date". The new rate of interest will become effective on each Interest Rate Change Date.

**(B) The Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-month U.S. dollar denominated deposits in the London market ("LIBOR") as published in the Wall Street Journal. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding One and Seven Eighths percentage points (1.875%) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next change date.

The Note Holder will then determine the amount of my monthly payment. The amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than 12.950%

**(E) Effective Date of Changes**

-4-

Borrower(s)' Initials

My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the applicable Interest Rate Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Change**

Before the effective date of any change in my interest rate and/or monthly payment amount, the Note Holder will deliver to me notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

F. <u>Effective Date</u>. The "Effective Date" of this Agreement shall be February 1, 2011, however shall not be binding upon Lender until the Lender has received a fully-executed original of this Agreement and all other requirements of Lender have been satisfied. Lender shall notify Borrower of such other requirements in writing which may include payment of amounts past due or the execution of additional documents such as an Assignment of Leases and Rents. Regardless of the date this Agreement is executed by Borrower and all other requirements are satisfied, all dates (including the Maturity Date), principal balance amounts, payment amounts and interest rates, set forth herein, shall be applied to the loan as if such had been executed or satisfied on the Effective Date.

G. <u>Modification to Security Instrument</u>. The Security Instrument is modified to incorporate the following Additional Covenant:

   Borrower is aware that this Loan is due and payable in full on February 1, 2014 with a Balloon Payment of the full principal balance outstanding on that date which, based upon scheduled payments would be $308,824.30, plus interest and any other amounts due. The actual amount of the Balloon Payment may be different. Borrower acknowledges and agrees that Lender has not made any representations to Borrower, either oral or written, that Lender will subordinate its lien created by this Security Instrument to any other lien which the Property may hereafter become subject to, including, without limitation, any lien arising from Borrower's subsequent construction of improvements on the Property. Borrower acknowledges and agrees that Lender is under no obligation to subordinate its lien created by the Security Instrument to any lien created hereafter and Lender does not intend to subordinate its lien to any other lien which the Property may hereafter become subject to.

H. <u>Truth and Accuracy of Recitals; Acknowledgment of Indebtedness</u>. The Borrower acknowledges the truth and accuracy of the recitals set forth above in the Factual Background and that it is liable and indebted to Lender for the principal amount set forth above together with interest thereon at the rate specified in the Note and all other fees, charges and expenses accrued and unpaid under the Loan Documents (the "Indebtedness"). Borrower acknowledges that: (i) it has no defense, counterclaim, offset, cross-complaint, claim or demand of any kind or nature whatsoever to reduce or eliminate all or any part of its liability to repay the Indebtedness which is due, owing and unpaid; (ii) nothing but full and complete performance

Borrower(s)' Initials

of all of its obligations in the payment of its Indebtedness shall satisfy and discharge its liability to Lender, and (iii) the Loan Documents are in full force and effect, are duly executed and delivered to Lender and constitute valid, binding agreements and obligations, are enforceable in accordance with their terms, and are hereby reaffirmed. Borrower hereby irrevocably waives and relinquishes all rights, if any, to directly or indirectly challenge, attack or dispute the Loan Documents, Lender's lien interest in the Property, the Indebtedness, or any actions of Lender taken or omitted to be taken in connection therewith. Borrower further acknowledges that, notwithstanding Lender's willingness to enter into this Agreement, Lender has made no representations regarding, and shall have no obligation to make, any further modifications to the Loan Documents.

I. <u>Incorporation</u>. This Agreement shall form a part of each Loan Document, and all references to a given Loan Document shall mean that document as hereby modified.

J. <u>No Prejudice; Reservation of Rights</u>. This Agreement shall not prejudice any rights or remedies of Lender under the Loan Documents. Lender reserves, without limitation, all rights which it has against any indemnitor, grantor, or endorser of the Note.

K. <u>No Impairment</u>. Except as specifically hereby amended, the Loan Documents shall each remain unaffected by this Agreement and all such documents shall remain in full force and effect.

L. <u>Integration</u>. The Loan Documents, including this Agreement: (a) integrate all the terms and conditions mentioned in or incidental to the Loan Documents; (b) supersede all oral negotiations and prior and other writings with respect to their subject matter; and (c) are intended by the parties as the final expression of the agreement with respect to the terms and conditions set forth in those documents and as the complete and exclusive statement of the terms agreed to by the parties. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument, including any of the other Loan Documents, the terms, conditions and provisions of this Agreement shall prevail.

M. <u>Release of Lender</u>. Borrower, on behalf of himself or herself and each of his or her members, partners, agents, employees, heirs, beneficiaries, representatives, successors and assigns, does hereby forever release, discharge and acquit Lender, Lender's predecessors Indymac Bank, FSB ("IMB") and Indymac Federal Bank, FSB ("IMFB"), the Federal Deposit Insurance Corporation, in its corporate capacity and in it capacity as Receiver for IMB and Conservator and Receiver for IMFB, Lender's, IMB's and IMFB's servicers, and each of their respective parents, subsidiaries and affiliate companies, and their respective officers, directors, shareholders, agents and employees, participants, successors, and assigns, and each of them, from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore, now existing or hereafter arising, or which could, might, or may be claimed to exist, of whatever

-6-

<u>Borrower(s)' Initials</u>

kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, which in any way arises out of, are connected with or relate to the Loan, the Loan Documents, this Agreement or the property securing the Loan as well as any action or inaction of any person or entity released hereunder with respect to the Loan, the Loan Documents, this Agreement or the property securing the Loan.

In this connection, Borrower hereby agrees, represents and warrants that he or she realizes and acknowledges that actual matters now unknown, unanticipated, unsuspected or misunderstood by him or her in connection with the subject matter of this release may have given or may hereafter give rise to causes of action, claims, demands, debts, defenses, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated, unsuspected or misunderstood, and he or she further agrees, represents and warrants that this release has been negotiated and agreed upon in light of that realization and that he or she nevertheless hereby intends to release, discharge and acquit the parties set forth hereinabove from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are in any way related to the Loan, the Loan Documents, this Agreement and the property referred to hereinabove. In furtherance of this intention, to the extent, if any, such provisions apply, Borrower expressly waives any and all rights conferred upon it by the provisions of California Civil Code Section 1542 with respect to the foregoing release, and expressly consents that the foregoing release shall be given full force and effect according to each and all of its express terms and provisions. Section 1542 provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Borrower understands and hereby acknowledges the significance and consequences of such release and specific waiver of Section 1542 and had the opportunity to seek the advice of an independent legal counsel concerning the same.

_____
Borrower's Initials

-7-

_____
Borrower(s)' Initials

N. Miscellaneous. This Agreement and any attached consents or exhibits requiring signatures may be executed in counterparts, and all counterparts shall constitute but one and the same document. If any court of competent jurisdiction determines any provision of this Agreement or any of the other Loan Documents to be invalid, illegal or unenforceable, that portion shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal or unenforceable portion had never been a part of the Loan Documents. This Agreement shall be governed by the laws of the state identified in the Loan Documents as the choice of laws. As used here, the word " include(s)" means includes(s), without limitation," and the word "including" means 'including, but not limited to." The undersigned understand and agree that the provisions of this Agreement and the original Note and Security Instrument shall bind the parties, and shall bind and inure to the legal representatives, successors and assigns of the undersigned respectively. If more than one person or entity is executing this Agreement as Borrower, then all of the obligations herein contained shall be considered the joint and several obligations of each person or entity constituting Borrower.


_Shawn L. Estep_
Shawn L. Estep
(Borrower)


_Jennifer C. Estep_
Jennifer C. Estep
(Borrower)


INDYMAC VENTURE, LLC,
a Delaware limited liability company

By: Indymac Mortgage Services,
    a division of OneWest Bank, FSB

By: _Jeanie Caldwell_
Print Name: Jeanie Caldwell
Its' Authorized Representative

-8-

Borrower(s)' Initials

Mod Agmt - Extend to Balloon Template.dot